Page 1

1

2    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
3    - - - - - - - - - - - - - - - - - x
     TYRIN TORRES and DAQUAN BRADLEY,

4
                          Plaintiffs,

5
          - against -                16 CV 6719(BMC)

6
     THE CITY OF NEW YORK, JOHN SIOKAS,

7    CHRISTOPHER WARD, EUGENE JONNY ,
     and JOHN DOE,

8
                          Defendants.

9    - - - - - - - - - - - - - - - - - X
                    225 Broadway

10                   New York, New York

11                   June 27, 2017
                     2:14 P.M.

12

13

14        DEPOSITION of KINGS COUNTY DISTRICT ATTORNEY'S

15   OFFICE, a non-party witness herein, by SHEA SCANLON

16   LOMMA, taken by the Plaintiff and Defendants

17   herein, pursuant to Federal Rules and Regulations,

18   and Subpoena, held at the above-mentioned time and

19   place, before Anita M. Cummo, a Notary Public of

20   the State of New York.

21

22

23

24

25

  

Page 80

1                    SHEA SCANLON LOMMA

2    either Sebastian Collin or anyone, with respect

3    to the incident that occurred on March 11, 2015

4    that is reflected in some part on the complaint

5    room screening sheet?

6         A     No.

7         Q     Have you ever spoken with a man by

8    the name of John Siokas?

9         A     Not to my knowledge.

10        Q     Have you ever spoken with any of the

11   police officers, in connection with the criminal

12   case or the arrest reflected on the complaint

13   room screening sheet?

14        A     Not to my knowledge.

15        Q     The squiggle or initials that are

16   contained on the complaint room screening sheet

17   on Plaintiff's Exhibit 10, what does the fact

18   that that appears on the document signify to

19   you?

20        A     That I signed off on her screening

21   sheet and she could then submit it to the court.

22        Q     When you say "signed off on it,"

23   what does that mean?

24        A     I approved it.

25        Q     Is it correct to say that Veronica

Page 81

1                          SHEA SCANLON LOMMA

2       Perez is the individual who prepared complaint

3       room screening sheet?

4             A       Yes.

5             Q       Another way to refer to her would be

6       to call her a screener?

7             A       Yes.

8             Q       At the time on March 12th, 2015, do

9       you know what Ms. Perez' title was within the

10      Kings County DA's office?

11            A       Yes.  She's a paralegal.

12            Q       Is that her title at the Kings

13      County DA's office, just paralegal, or is it

14      paralegal within a specific department or is

15      there more specificity to the title?

16                     MR.  LUMER:  Objection to form.

17            A       There are grades of paralegal.  I

18      don't know what grade she was.  She was assigned

19      to the ECAB unit.

20            Q       Do you know for how long she had

21      been working for the Kings County District

22      Attorney's Office, as of March 12, 2015?

23            A       I don't know.

24            Q       Is it correct to say that on

25      March 12th, 2015 you were her supervisor?



Page 95

1                    SHEA SCANLON LOMMA

2      that John Siokas made any personal observations,

3      with respect to the criminal defendants; is that

4      right?

5            A      That is a correct statement.

6            Q      If the basis for the prosecution of

7      Tyrin Torres and Daquan Bradley was based on

8      John Siokas' observations of them committing

9      some sort of crime, would that not be in the

10     criminal court complaint?

11                  MR. LUMER:  Objection.

12           A      Not necessarily.

13           Q      Why do you say that?

14           A      The complaint has to have a

15     reasonable cause to believe that the defendants

16     committed all of the crimes alleged.  We can

17     allege that in any way, through hearsay or level

18     of hearsay or less.  So, the criminal court

19     complaint does not generally have all of the

20     proof in any case.  But it has what needs to be

21     alleged at arraignments to have reasonable cause

22     to believe.  The victim saying they did it by

23     itself is enough.

24           Q      Having read this document and the

25     narrative that's contained within the criminal

Page 96

1                    SHEA SCANLON LOMMA

2    court complaint, does it still make sense to you

3    that in the complaint room screening sheet only

4    one criminal defendant is noted as identified by

5    the complaining victim?

6                    MR. LUMER:  Objection.

7         A    It makes sense to me that Wilfredo

8    Vasquez identified all three defendants because

9    we didn't say "Wilfredo Vasquez stated at that

10   time and place the defendant and two

11   unapprehended others did act in concert."

12        Q    It's your understanding Wilfredo

13   Vasquez as the complaining victim identified

14   Tyrin Torres and Daquan Bradley and Sebastian

15   Collin; is that correct?

16        A    It appears so from the criminal

17   court complaint.

18        Q    The criminal court complaint is

19   generally prepared after the complaint room

20   screening sheet is completed or at least the

21   first draft is completed; is that right?

22        A    Usually.

23                    MR. LUMER:  I would like to refer

24                    your attention back to the complaint

25                    room screening sheet.

Page 97

1                          SHEA SCANLON LOMMA

2        Q      I'm trying to figure out, how do you

3   reconcile the information contained within the

4   criminal court complaint that Wilfredo Vasquez

5   identified all the defendants, the criminal

6   defendants, but then in the complaint room

7   screening sheet it notes that only one of the

8   criminal defendants was identified at a show-up

9   identification procedure?

10                  MR. LUMER:  Objection.

11        A      I don't.

12        Q      Is it possible that in light of what

13   the criminal court complaint contents are and

14   the complaint room screening sheet that not all

15   of the identifications were noted in the

16   complaint room screening sheet?

17        A      Yes.

18                  MR. LUMER:  Objection.

19        Q      The criminal court complaint appears

20   to be signed by John Siokas; is that right?

21        A      Yes.

22        Q      Which generally would mean that he

23   reviewed the document and then signed off on the

24   document?

25                  MR. LUMER:  Objection.

Page 98

1                    SHEA SCANLON LOMMA

2         A      Yes.

3         Q      To your knowledge, John Siokas never

4    reviewed the complaint room screening sheet?

5         A      We do not generally show the

6    screening sheets to the police officers.

7         Q      Generally, it's not likely that John

8    Siokas reviewed the contents of the complaint

9    room screening sheet to check its accuracy or

10   just to read the contents?

11        A      I don't know what happened in this

12   case.  That is generally not what happens.

13        Q      Are you aware of any case or

14   situation where not all identifications that

15   were made at the scene of an arrest were noted

16   on a complaint room screening sheet?

17        A      Yes.

18        Q      How often have you seen that occur

19   where not all the identifications made at the

20   scene of an arrest were not noted on the

21   complaint room screening sheet?

22              MS. LICHSTEIN:  Objection to

23              form.  You might ask her to read it

24              back.

25              MR. THADANI:  I want to keep the

Page 99

1                  SHEA SCANLON LOMMA

2              record clean.  I will rephrase it.

3       Q      To clarify, you have encountered

4   situations where a complaint room screening

5   sheet does not contain all of the

6   identifications made at the scene of an arrest;

7   is that right?

8       A      Yes.

9              MR. LUMER:  Objection.

10      Q      How often have you seen that occur?

11      A      I don't know.

12      Q      Is it possible that the ECAB

13  screener, Ms. Perez, misunderstood some of what

14  John Siokas related to her over the telephone

15  during the interview?

16             MR. LUMER:  Note my continuing

17             objection to the concept of what is

18             possible in these questions.

19      A      Anything is possible.

20             MR. THADANI:  I'll continue to

21             start with that and then break it

22             down to show that it's more likely

23             than metaphysically possible.

24             MR. LUMER:  Well, I appreciate

25             the intent.  But I'm going to object

Page 100

1                    SHEA SCANLON LOMMA

2              generally to any question based on

3              the idea of whether or not something

4              is theoretically possible.

5                    MR. THADANI:  Noted.

6         Q      It's fair to say that the narrative

7    portion of the complaint room screening sheet,

8    those are just notes; right?

9                    MR. LUMER:  Objection.

10        Q      They are notes?

11        A      I guess I don't understand the

12   characterization.  They're notes of what?

13        Q      The information contained within the

14   narrative section of the complaint room

15   screening sheet are the screener's notes about

16   the case?

17        A      Yes.

18        Q      It's not a transcript of information

19   either pulled from an interview or from any

20   documents; is that right?

21                    MR. LUMER:  Objection.

22        A      Yes.  It may reflect several

23   sources.

24        Q      You have testified, I think earlier,

25   that the narrative reflects the DA's office

  

Page 112

```
 1                    SHEA SCANLON LOMMA
 2    did not identify Tyrin Torres during a show-up
 3    procedure; okay?
 4          A     Okay.  Could I ask you to clarify?
 5    Do you mean if there was a show-up procedure and
 6    he failed to identify him?
 7          Q     Yes, assuming there was a show-up
 8    procedure and assuming that the complaining
 9    victim did not identify Tyrin Torres during that
10    show-up procedure, would you consider that to be
11    either Brady material or possibly exculpatory
12    material that should be turned over to Tyrin
13    Torres?
14          A     It would be Brady material.
15          Q     Why is that?
16          A     Because the victim cannot identify
17    the defendant, then that -- that tends -- then
18    it's possible that the defendant wasn't the
19    person, although in this case we have the
20    officer seeing.
21          Q     If there's Brady material, I think
22    we talked about this earlier, but to clarify,
23    that's material that should be turned over as
24    soon as reasonably practical; is that fair to
25    say?
```

Page 113

1                    SHEA SCANLON LOMMA

2        A      Yes.   It would be reflected in the

3   screening sheet.

4        Q      What would be reflected on the

5   screening sheet?

6        A      Any Brady material.

7        Q      Is it fair to say that on the

8   complaint room screening sheet there is no Brady

9   material indicated?

10       A      Yes.

11       Q      It's your testimony that if there

12  was a show-up procedure and if the complaining

13  victim did not identify Tyrin Torres and Daquan

14  Bradley, that would be Brady material that

15  should be reflected on the complaint room

16  screening sheet?

17               MR.  LUMER:   Objection.

18       A      Yes, if we knew that, yes.

19       Q      Are you aware of whether or not any

20  Brady material or any information that would be

21  properly classified as Brady material was turned

22  over during the course of this criminal

23  prosecution?

24       A      No.

25       Q      Do you know one way or another?

  

**Page 116**

1                    SHEA SCANLON LOMMA

2        Q     Based on the criminal courts

3   complaint screening sheet and the criminal court

4   complaint, is it your understanding that Daquan

5   Bradley and Tyrin Torres were not identified by

6   the complaining victim or that they were

7   identified by the complaining victim during a

8   show-up procedure or at some sort of procedure?

9        A     I don't know.

10        Q     Why do you say that?

11        A     Because the complaint says that

12   Wilfredo Torres --

13               MR. THADANI:  Vasquez.

14        A     I'm sorry.  Wilfred Vasquez states

15   that defendants did act in concert and the

16   screening sheet indicates that there was a

17   show-up as to one person.

18        Q     There is somewhat of a discrepancy

19   there?

20               MR. LUMER:  Objection.

21          Objection.

22        A     There could be.  There could be.

23   The screening sheet does not always have all the

24   identifications on it.

25        Q     I think you testified to that

Page 117

1                    SHEA SCANLON LOMMA

2    earlier; is that right?

3         A      Yes.

4         Q      Is that a yes?

5         A      Yes.

6         Q      Is it also fair to say that you were

7    not involved in any conversation that John

8    Siokas had with Veronica Perez, with respect to

9    the creation of the screening sheet; right?

10        A      Not to my knowledge.

11        Q      You don't know what they spoke

12   about?

13                    MR. LUMER:   Objection.

14        A      No.

15        Q      You don't know whether John Siokas,

16   in fact, informed the screener that he made an

17   observation, with respect to the plaintiffs or

18   Tyrin Torres and Daquan Bradley committing some

19   sort of crime?

20        A      I don't know.

21        Q      I think earlier, referring you again

22   to Plaintiff's Exhibit 10 under the defendant

23   section on the first page, I may have misheard

24   this, but it sounded like you said that some of

25   this information is auto-populated and some of