UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TYRIN TORRES and DAQUAN BRADLEY,

                Plaintiffs,

- against -

CITY OF NEW YORK, SGT. CHRISTOPHER WARD, EUGENE JONNY, and JOHN SIOKAS,

                Defendants.

**MEMORANDUM DECISION AND ORDER**

16 Civ. 6719 (BMC)

**COGAN,** District Judge.

    Plaintiffs Tyrin Torres and Daquan Bradley brought this action under 42 U.S.C. § 1983, alleging false arrest, malicious prosecution, and violations of their right to a fair trial on the part of the City of New York and police officers Sgt. Christopher Ward, Eugene Jonny, and John Siokas.[1] Specifically, plaintiffs allege that (i) defendants arrested them for robbery, assault, and other charges; (ii) the officers had no probable cause to arrest them because they were not engaged in any criminal conduct; and (iii) thereafter, defendants fabricated statements to initiate prosecution. Defendants have moved for summary judgment, arguing that plaintiffs were arrested when a complaining victim identified them as having assaulted and robbed him. For the following reasons, defendants' motion for summary judgment is granted.

---

[1] Plaintiffs had previously brought a Monell claim, but withdrew the claim during the pre-motion conference briefing in connection with this motion for summary judgment.

**BACKGROUND**

The following undisputed facts are from the parties' Local Rule 56.1 Statements.[2]  On March 11, 2015, plaintiff Torres was inside the Stillwell Avenue subway station in Brooklyn, New York, at 8:40 p.m.  At some time during the evening, plaintiff Bradley and non-party Sebastian Colin were present at a barbershop on Mermaid Avenue between West 15th and 16th Streets in Brooklyn, New York.  As Torres walked home from the subway station, he encountered Bradley and Colin on Mermaid Avenue.  Plaintiffs and Colin agreed to go to a liquor store located at the intersection of Mermaid Avenue and West 16th Street.  They remained inside the liquor store for some minutes, before exiting and hailing a passing livery cab.

At around the same time – about shortly after 8:30 p.m. – inside of a deli located on Mermaid Avenue in Brooklyn, non-party Wilfredo Vasquez informed defendant Officer Siokas that he had just been the victim of a crime.  More specifically, Vasquez informed Officer Siokas that he was the victim of an assault and robbery that occurred on the corner of Mermaid Avenue and West 19th Street at approximately 8:30 p.m.  Vasquez told Officer Siokas that a group of individuals punched and kicked him until he fell to the ground, that he was kicked and punched while on the ground, and that his cellular telephone was forcibly removed from his hand.

---

[2] Plaintiffs deny several statements offered by defendants, but they often offer no citations to the record to dispute defendants' facts, which are supported by the deposition and documentary evidence.  Litigants in this District are required by our Local Rules to specifically respond to the assertion of each purported undisputed fact by the movant and, if controverting any such fact, to support their position by citing to admissible evidence in the record.  See Local Rule 56.1(b), (d).  Plaintiffs have failed to comply with the Local Rules in several ways.  First, plaintiffs fail to support their purported denials with any citations to admissible evidence or with citations to evidence that actually support their contentions.  See Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008) ("A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." (citations omitted)); Holtz v. Rockefeller & Co., 258 F.3d 62, 74 (2d Cir. 2001) (explaining that where there are no citations to admissible evidence, or the cited materials do not support the purported undisputed facts in a party's Rule 56.1 statement, those assertions must be disregarded).  Second, plaintiffs purport to deny certain factual assertions that the record shows were previously admitted by plaintiffs during deposition.  Third, plaintiffs' denials are peppered with argument, rather than fact.

Vasquez also informed Officer Siokas that, as a result, he sustained bruising and swelling to his face and body. Officer Siokas observed swelling to Vasquez's face and redness to his ribs. After Vasquez and Officer Siokas exited the deli, Vasquez pointed towards three males, Torres, Bradley, and Colin, across the street getting into a livery cab in front of a liquor store, and informed Officer Siokas that they were the ones that assaulted and robbed him.

The livery cab containing plaintiffs and Colin started to pull away but was immediately pulled over by members of the NYPD. Plaintiffs and Colin were removed from the cab and handcuffed. Thereafter, plaintiffs and Colin were lined up next to each other, consistent with a show-up identification procedure, and Vasquez again confirmed to Officer Siokas that all three of the men assaulted and robbed him.[3] From a vantage point of about twenty feet away from plaintiffs and Colin, Vasquez pointed at the three men and identified them as the assailants. Based on this information from Vasquez, plaintiffs and Colin were arrested immediately and charged the following afternoon in a criminal complaint with Robbery in the Second Degree, Assault in the Second Degree, Robbery in the Third Degree, Grand Larceny in the Fourth Degree, Assault in the Third Degree, Petit Larceny, Criminal Possession of Stolen Property in the Fifth Degree, Menacing in the Third Degree, and Harassment in the Second Degree. Following arraignment, neither plaintiff made any additional court appearances, and the charges were subsequently dropped some months later.

## DISCUSSION

### I. Standard of Review

"[S]ummary judgment may be granted only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Marvel Characters, Inc.

---

[3] The record indicates that there were four individuals involved in the assault and robbery of Vasquez, and the fourth individual is referred to as the "unapprehended other."

3

v. Kirby, 726 F.3d 119, 135 (2d Cir. 2013) (internal quotation marks omitted). "In determining whether there is a genuine dispute as to a material fact, [the court] must resolve all ambiguities and draw all inferences against the moving party." Id. In ruling on a motion for summary judgment, a district court "may rely on any material that would be admissible at a trial." Lyons v. Lancer Ins. Co., 681 F.3d 50, 57 (2d Cir. 2012) (internal quotation marks omitted); see also Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp., 635 F.3d 48, 52 (2d Cir. 2011) ("[T]he nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." (internal quotation marks omitted)).

"A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball, 542 F.3d at 310 (citations omitted). A dispute is not "genuine" if no reasonable factfinder "could return a verdict for the nonmoving party." Nabisco, Inc. v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). This means that the nonmoving party must present more than a "scintilla of evidence," Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 178 (2d Cir. 1990) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (internal quotation marks omitted). Nor can a party rely on "mere assertions that affidavits supporting the motion are not credible." Gottlieb v. Cty. of Orange, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

## II. Analysis

### A. False Arrest

In evaluating a § 1983 claim for false arrest, courts have generally looked to the law of the state in which the arrest occurred. See Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012). "A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law." Id. (internal quotation marks omitted)). "Under New York law, an action for false arrest requires that the plaintiff show that '(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged.'" Id. (quoting Broughton v. State, 373 N.Y.S.2d 87, 373 N.Y.S.2d 87, 93 (1975)).

Probable cause "is a complete defense to an action for false arrest." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013). "Information about criminal activity provided by a single complainant can establish probable cause when the information is sufficiently reliable and corroborated;" however, "a report of a crime alone will not necessarily establish probable cause," and some corroboration by the police is necessary. Oliveira v. Mayer, 23 F.3d 642, 647 (2d Cir. 1994) (internal citations omitted); see also Marin v. Viggiani, 92 Civ. 3836, 1993 WL 404098, at *6 (S.D.N.Y. Oct. 5, 1993) ("[W]hen a putative victim precisely identifies the alleged perpetrator of a crime and there is independent evidence to support at least some of the victim's assertions, a person of reasonable caution is warranted in believing that an offense has been committed by the alleged perpetrator.").

Here, the officers had probable cause to arrest plaintiffs and Colin. A complaining victim told Officer Siokas that he was just assaulted and robbed, the complaining victim had bruising and injuries to his face and ribs, which corroborated the allegations of assault, and after leaving the deli, the complaining victim identified plaintiffs and Colin two times as the individuals who assaulted him: first when he spotted them getting in to the livery cab, and second when he pointed at them during the show-up shortly after his initial identification. Because the victim identified the plaintiffs with conviction shortly after his assault and his injuries corroborated that an assault had taken place, the officers had probable cause to arrest plaintiffs. See Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed.").

The fact of Vasquez's positive identification is actually supported by the testimony of plaintiff Bradley, who admitted during deposition that Vasquez pointed at "us," that is, Torres, Bradley, and Colin, during the show-up. Plaintiffs' after-the-fact allegation that Vasquez only pointed at Colin is conjecture at best, and at twenty feet away, plaintiffs have no basis to speculate whether Vasquez was pointing at one of them or all of them, nor could any of them hear the conversation between Vasquez and Officer Siokas.

That the charges were thereafter dismissed and there later came to be evidence that at least plaintiff Torres was elsewhere when Vasquez was assaulted is beside the point. It is well-settled that even where the information on which a police officer relies later turns out to be mistaken, probable cause still exists as long as the arresting officer acted reasonably in relying on that information. See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). This means that the test is an objective one, and an officer's subjective belief at the time of the arrest is irrelevant.

6

See Martinez v. Simonetti, 202 F.3d 625, 633 (2d Cir. 2000). That is why plaintiffs' focus on the inconsistencies arising from Officer Siokas's memory, *e.g.*, whether he witnessed the assault, what time it occurred, or where it occurred, all miss the mark. Whatever Officer Siokas was thinking he saw or when he saw it does not matter when the actual victim of the assault, bearing the bruises and markings of just being assaulted, points at three individuals and identifies them twice as his assailants. "[T]he validity of an arrest does not depend upon an ultimate finding of guilt or innocence." Haussman v. Fergus, 894 F. Supp. 142, 147 (S.D.N.Y. 1995). Thus, whether the charges for which plaintiffs were arrested are later dismissed is irrelevant to a determination of probable cause at the time of arrest. See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979).

This principle is also why courts hold that "[o]nce a police officer has a reasonable basis to believe there is probable cause to arrest, he is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest." Panetta v. Crowley, 460 F.3d 388, 396 (2d Cir. 2006) (quoting Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001)). "Nor does it matter that an investigation might have cast doubt upon the basis for the arrest." Id. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Little v. Massari, 526 F. Supp. 2d 371, 375 (E.D.N.Y. 2007) (internal quotation marks and citation omitted). This means that plaintiffs' protests as to their arrest did not require the police officers to investigate that moment whether plaintiffs could have been somewhere else. The officers had probable cause to arrest, and that defeats plaintiffs' claims for false arrest. Accordingly,

defendants' motion for summary judgment as to this claim is granted.  See Zanghi v. Inc. Vill. of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985).

### B. Malicious Prosecution

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks omitted).  In addition to these state law elements, a malicious prosecution claim brought under § 1983 requires showing "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y. City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000).  "[T]he law places a heavy burden on malicious prosecution plaintiffs." Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004) (internal quotation marks and citation omitted).

The third element is the most important here "[b]ecause lack of probable cause is an element of a malicious prosecution claim," and "the existence of probable cause is a complete defense to a claim of malicious prosecution." Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013).  As established above in the analysis for false arrest, probable cause existed to arrest both plaintiffs, and that probable cause did not dissipate prior to plaintiffs being charged with robbery and assault.  "Where there is no change in the information known to police at the time of arrest and prosecution, probable cause sufficient to warrant arrest precludes a claim for malicious prosecution." Cortes v. City of New York, 148 F. Supp. 2d 248, 255 (E.D.N.Y. 2015) (noting that plaintiff pointed to no change in the information available to the defendants after the time he was arrested and, therefore, "[s]ince probable cause existed for the arrest and it did not dissipate, that same probable cause requires dismissal of plaintiff's malicious prosecution claim").

8

To the extent that plaintiffs allege that Officer Siokas provided false information to the Kings County District Attorney's Office (the "KCDA"), specifically that Officer Siokas personally observed plaintiffs assault Vasquez,[4] it is well-settled that "even where plaintiff alleges . . . that the malicious prosecution is based on fabricated evidence, the existence of probable cause independent of the fabricated evidence is a defense to that claim." Hoyos v. City of New York, 999 F. Supp. 2d 375, 290 (E.D.N.Y. 2013) (internal quotation marks and citation omitted); see also Blau v. Suffolk Cty., No. 11CV4818, 2016 WL 426515, at *4 (E.D.N.Y. Feb. 3, 2016); Maldonado v. City of New York, No. 11 CIV. 3514 RA, 2014 WL 787814, at *8 (S.D.N.Y. Feb. 26, 2014) ("[T]he existence of probable cause independent of the allegedly falsified evidence is a defense to a malicious prosecution claim." (internal quotation marks and citation omitted)); Morse v. Spitzer, No. 07-cv-4793, 2012 WL 3202963, at *5 (E.D.N.Y. Aug. 3, 2012).

On this point, it is also useful to consider the documents the parties have tendered because they also show that the facts as they existed on the evening of March 11, 2015, were one and the same as the facts that existed on the afternoon of March 12, 2015, when plaintiffs were charged in a criminal complaint. A close review of the criminal complaint shows no mention whatsoever of the plaintiffs' contention that Officer Siokas said he viewed the assault. To the contrary, the criminal complaint is based solely on the victim's identification, confirming that the basis for plaintiffs' arrest the night before and their charge that afternoon was the same.

---

[4] On this point, I accept plaintiffs' allegation that Officer Siokas stated initially that he observed the assault, even though the support for plaintiffs' allegation is shaky at best, given that the only document supporting this allegation is the KCDA screening sheet, which was prepared by a KCDA paralegal and not reviewed or signed by Officer Siokas. In any event, even accepting the facts favorably to the non-moving parties, the independent probable cause provided by Vasquez means that plaintiffs' purported dispute fails to raise a material issue of fact.

Thus, whether or not Officer Siokas provided false information to the KCDA with respect to observing plaintiffs assault Vasquez is irrelevant as to plaintiffs' malicious prosecution claim because, as discussed, there was independent probable cause to prosecute plaintiffs based solely on the complaining victim. And there was no change in information between the time of plaintiffs' arrests and the criminal complaint to vitiate the existence of probable cause. Thus, defendants' motion for summary judgment as to this claim is also granted. See Zanghi, 752 F.2d at 45.

C. **Fair Trial**

Plaintiffs allege that Officer Siokas's purported fabrications regarding his observation of the assault deprived them of their right to a fair trial. A plaintiff establishes a constitutional violation for the denial of his right to a fair trial based on the fabrication of evidence if he proves that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of New York, 486 F. App'x 149, 152 (2d Cir. 2012); see also Ricciuti v. N.Y. City Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997) ("When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.").[5] Therefore, to have a cognizable claim for the denial of the right to a fair trial, a plaintiff must establish a causal connection between the fabricated evidence and his

---

[5] I have reservations about the existence of a claim for relief for "denial of the right to a fair trial." To me, this is merely a characterization of a particular species of the denial of due process that is part of a malicious prosecution claim. The common law did not recognize such a claim and the Constitution does not expressly provide for one. This may be why the title "denial of fair trial" is itself a misnomer – the claim is usually raised where, as here, there has been no trial at all. When courts start splitting out and adding labels to particular fact patterns that present themselves under existing claims, all they do is multiply the number of causes of action. However, I acknowledge that the Second Circuit has, at least implicitly, acknowledged the existence of such a claim.

deprivation of liberty. See Zahrey v. Coffey, 221 F.3d 342, 348, 355 (2d Cir. 2000) ("The manufacture of false evidence, in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right," and the "deprivation of liberty of which [plaintiff] complains [must] be shown to be the *result of [the defendant's] fabrication of evidence*." (internal quotation marks omitted and emphasis added)).

Importantly, and unlike the law with respect to malicious prosecution claims, the Second Circuit has held that the existence of probable cause to arrest and prosecute is not a complete defense to a fair trial claim. See Ricciuti, 124 F.3d at 130. However, at the same time, the Second Circuit has also held that a plaintiff must show causation between the alleged fabricated evidence and a plaintiff's deprivation of liberty. See Zahrey, 221 F.3d at 355. It is at the intersection of these two cases that I find that plaintiffs have no claim for a violation of their right to a fair trial. "[A]lthough probable cause is not a complete defense to a fair trial claim based on fabricated evidence, plaintiff still must show . . . that the alleged fabrication caused a deprivation of liberty." Hoyos, 999 F. Supp. 2d at 394. In other words, to show causation, "plaintiff must show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself, " where "independent probable cause exists for the prosecution" in the first place. Id.

As an initial matter, the facts of the instant case make it entirely distinguishable from Ricciuti. There, the plaintiffs had alleged that the police deprived them of their right to a fair trial by fabricating evidence, including a confession, concerning the circumstances of an alleged assault, and as a *direct* consequence of the fabricated evidence, plaintiffs were charged with a much more serious crime, felony assault in the second degree, rather than misdemeanor assault, and the prosecutors added a charge for aggravated racial harassment. 124 F.3d at 126-27.

11

Here, unlike in <u>Ricciuti</u>, plaintiffs have not and cannot raise an issue of fact as to whether the purported fabrications led them to be charged with more serious crimes or detained for a longer period of time. There are three KCDA documents demonstrating that the alleged fabrications played no role in the bringing of charges.

First, as noted above, there is nothing in the criminal complaint that supports even an inference that Officer Siokas's purported observation of the assault factored into the KCDA's decision to bring charges against plaintiffs. There is no mention whatsoever that Officer Siokas had first-hand knowledge; rather, all of the information is from the complaining witness, referred to as the "informant." Notably, the criminal complaint states:

> *The source of deponent's [Siokas] information and the grounds for deponent's belief are as follows*:
>
> *Deponent is informed by Wilfredo Vasquez* that, at the above time and place, the defendants did act in concert with an unapprehended other and did repeatedly punch and kick the informant about the face and body and further acted in concert by removing informant's cell phone from informant's hand.
>
> *Deponent is further informed by the informant* that the above described actions caused informant to suffer bruising and swelling to the face and body, to suffer substantial pain, to fear further physical injury and to become alarmed and annoyed.

(emphasis added). Thus, the criminal complaint demonstrates that the basis of the charges was Vasquez's identification.

Second, four months later, when the KCDA decided to dismiss the charges, its own internal memorandum demonstrates that the entirety of the case rested on Vasquez's identification. In fact, the internal memorandum, which was drafted by the prosecutors, is itself dispositive of the causation issue. It states:

> *The sole witness Wilfredo Vasquez*, is unable to identify the defendants. When interviewed by the District Attorney's Office the complainant stated, in sum and substance, that the complainant did not see the defendants attacking and robbing the complainant. The complainant observed defendants Bradley, [Colin] and

12

> Torres standing nearby with other males after the complainant made a 911 call. *NYPD Detective John Siokas (Shield No. 2825, Command No. 740), did not observe the assault and the robbery*.

(emphasis added). If Officer Siokas had viewed the assault, then the complaining witness's lack of subsequent identification would be balanced against his memory in the memorandum, if, of course, the prosecutors had any basis to believe that Officer Siokas saw anything. The lack of discussion, and the fact that the memorandum actually states affirmatively and unequivocally that Officer Siokas did not view the assault, underscores the fact that Vasquez's identification was the alpha and the omega of the charges brought against plaintiffs.

This internal memorandum was drafted a short four months after the charges were brought, and no reasonable juror could find that the prosecutors relied on any purported observation by Officer Siokas in the time between bringing the complaint, which made no mention of Officer Siokas's observations, and the decision to dismiss, which stated affirmatively that Officer Siokas did not observe the assault. Additionally, in the brief time between the criminal complaint and the internal memorandum, plaintiffs made no subsequent court appearances such that, as a fundamental insufficiency, plaintiffs have failed to show any deprivation of liberty "above and beyond the fact of the prosecution itself" as a result of any false statements. Hoyos, 999 F. Supp. 2d at 394.

The third document is the KCDA screening sheet, which, as noted above, was prepared by a KCDA paralegal after a telephone conversation with Officer Siokas. However, the record is undisputed that Officer Siokas never saw it, reviewed it, signed it, nor verified any of the information in it. Further, even though the paralegal recounted that the "A/O," short for arresting officer, observed the assault, it remains that neither the criminal complaint nor the internal memorandum make any mention of this, such that no reasonable juror could find that this

statement or misstatement mattered in the prosecutors' decision-making. Accordingly, plaintiffs' fair trial claim also fails.

## **CONCLUSION**

Defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment in favor of defendants, dismissing the complaint.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
September 27, 2017